Good morning, and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the circuit court. I'm here from Anchorage, Alaska. I'm sitting this week with Judge Carlos Baez, who lives right here and has his chambers here in San Francisco, and Judge Johnstone, who's with us from Montana. There are several cases on the calendar where lawyers are splitting their time, so I just want to announce to all of you that the way we'll do that is that the clerk has very kindly said that he will reflect that time. He'll split the time for you on the clock. So for each speaker, just watch the clock, and when it comes down to zero, your time is up. Okay? That should make it a little easier for you to keep track of your divided time. I have to start with a little bit of housekeeping, if you can bear with me. The following four cases have been submitted on the briefs, and we will not hear argument in them. The first is 22-1225, Maris v. Garland. The second is 22-1970, Mendez Amador v. Garland, 22-974, Santiago Diego v. Garland, and 22-207, Miserita Herijon v. Garland. The first case on the calendar for argument is the estate of Cecil Elkins, Jr., 22-16027. Give me just one minute. Come right on up. Yes, we're ready to hear your argument. I'm just going to be shuffling papers for one more minute here while I get ready. Okay, I'm finally all set. Go right ahead. Good morning. May it please the Court, my name is Michelle Jordan. I'm with the Law Office of Michael J. Curls, representing appellants, the estate of Cecil Elkins, Jr. I would like to reserve three minutes for rebuttal. You may. In consideration of whether an abuse of discretion led to a manifest miscarriage of justice, we must consider whether the abuse of discretion had a material effect on the result. This analysis is particularly important here because the key narrator in this story, Cecil Elkins, Jr., is not alive to tell his story. Therefore, it was even more important for the trial court to marshal the evidence in a manner which allowed the plaintiffs in this case to present to the jury all the facts necessary to determine whether or not the force used against Mr. Elkins on November 13, 2013, was excessive. When we weigh the scales of evidence, on the one hand, the respondents were able to say that Mr. Elkins was a drug addict, he was a meth, he was a drug addict, he was a, he tried to kill a cop, they repeatedly said he tried to kill a cop, that he had a tumultuous relationship with his wife. On the other hand, the appellants were prohibited from showing that Officer Pelisle had a prior incident whereby, in a similar circumstance, he threatened to kill a suspect who ran from him. The appellants were prohibited from presenting evidence that the negligent tactics prior to the shooting led to Cecil Elkins' death. Could I ask, oh, please, go ahead. I'd like you to concentrate on the procedural focus in this case. As I understand it, you're appealing an order of the district court which dismissed the complaint for failure to properly plead facts under Iqbal and Twombly, which would plausibly state a claim for negligence. Is that correct? That is correct. All right. I'm impressed by the fact that that exact question was taken up by this court earlier and the ruling, similar ruling, was reversed. What I don't understand is why the district court judge, the second time around, granted a motion to dismiss on the pleadings when this court had found that the pleadings were adequate in its mandate. Perhaps you could address that for me. Your Honor, I agree with you, and I am likewise confused. And even in the court's ruling, they are inconsistent in that, on the one hand, they're saying the pleadings are insufficient, yet the court is citing to evidence that supports the allegations that were set forth in the First Amendment complaint. Because I think that the mandate of this court on the first appeal reversed both the ruling that the motion of summary judgment was erroneously entered because it was a triable issue of fact, and also the ruling that the pleading was insufficient. Now, the first ruling, that is, that summary judgment was improperly granted, is really superfluous after the ruling that the pleading is sufficient. But I don't understand why the judge entered his ruling dismissing the complaint for failure to plead a cause of action. In the court's ruling, he attempts to change the respondent's motion for judgment on the pleading into a motion in limine, based on the law of the case. And again, I don't understand the court's ruling in that regard. Perhaps your learned friend can illuminate me on that. Ms. Jordan, could you help me understand exactly where in our prior decision we addressed the state negligent tactics claim? Are those not two separate legal standards, the federal qualified immunity at issue and the state negligent tactics claim? Well, according to the court of appeal applying the law from the Martinez case, the court used the same reasonable objective standard in the federal level to apply to the state case law claims, and the court does specifically state that in the opinion. Is that correct? I think that it is a broader case law has established that there is a broader review of analysis of this issue. However, if the court found a triable issue effect on the narrow issue of the actual shooting, it would stand to reason that the broader issue, when we discuss the negligent tactics, and we have the report of our expert, Roger Clark, who discusses the manner in which the negligent tactics were insufficient, that there would be tribal issues there as well. So it's not a case where the court completely ignored the fact that the appellant has state law causes of action. They mention it, and they actually make sure that we are aware that we're looking at your state law causes of action, and under Martinez, we're applying the same standard. So it would be improper for the district court to come back and say that the appellate court was wrong for using Martinez as their basis in a different motion. On the initial summary judgment motion on the negligent tactics claim, what evidence of negligent tactics did you present? We presented a declaration from our expert, Roger Clark. In the summary judgment? In the opposition to the summary judgment motion, yes. Okay. Go ahead. I'm just going to ask. I'm not clear what your theory was about negligent tactics and where that's really pleaded. The allegation in the complaint was that negligent tactics led to the incident. Right. I've seen that. So there were no specifics, and I would agree with you on that, there were no specifics in the complaint about what tactics were negligent. Those were developed in discovery. Okay. So that's fine. So can you tell me, because I didn't, it sounds like I didn't miss it, so that's what I've read in the complaint. So can you tell me what the negligent tactics theory was that was advanced? For instance, they could have set up a perimeter. They could have considered less excessive force such as hands-on contact. At the time when Officer Palliel realized that a cover had been blown, there could have been an opportunity to reassess and determine how to surveil Mr. Elkins. These are all facts that were not necessarily in the complaint, but they were certainly developed in discovery, and they were certainly presented at trial. However, we were not allowed to have our expert testify as to why those tactics were negligent based upon the court's ruling on the motion for judgment on the pleadings as well as the motion in Lemonade as it related to Mr. Clark. So is it your view that when I read the prior disposition and it refers to state claims, you think that this panel was referring to only to negligent tactics claim? I think that the panel was referring to the negligence claim as a whole, but based on the case law, the negligent tactics are a part of assessing the reasonableness of force used by the officer. Okay. So I'm not sure that we just communicated. Did you think that your complaint states a claim for negligence apart from negligent tactics? Yes. All right. Thank you. That's helpful. The other issue that is key in this case is the issue of standing for Mr. Elkins' wife, Crecia Elkins. Initially, the trial court decided to trifurcate the case and make sure that the inflammatory evidence about the relationship between Mr. Elkins and his wife would be heard at the damages phase of trial. However, we were mandated to place Mrs. Elkins on the stand, and she had to testify about some of the embarrassing nature of their relationship. Ms. Jordan, I think the—do you disagree that you had to establish standing at the threshold, at the liability stage? Yes. Okay. And did the court require you to put on Ms. Elkins, or was that your decision? The court required us to put on Mrs. Elkins to establish that she had a substantive marital relationship with Mr. Elkins. If standing is a threshold issue—well, I guess a couple of questions here with respect to the standing. What type of standing do you understand her testimony went to? Was it Article III standing? Was it 14th Amendment standing to assert third-party interests? What kind of standing? It was for the 14th Amendment cause of action to establish that there was a sufficient or the court previously said would be held for the damages side of the case. We were forced to present that in the liability side of the case. There is no case on point as to whether or not this—where this evidence should fall in a trial, and so I would plead with this court to give some direction to the district court as to how this information should be presented. For example, with the children, we weren't required to place the children on the stand to say, I am Cecil Elkins, Jr.'s daughter, I am Cecil Elkins, Jr.'s son. But Mrs. Elkins, because they have some marital problems, we had to put her on the stand to show that they were actually in a marital relationship at the liability phase of the trial. Did you draw any distinction in the trial court between the testimony of your client—I understand your—let me just preface it—I understand your argument is that that testimony that you're referring to in response to Judge Johnstone's question should have only come in at the damages phase. Okay. But turning back to the liability phase, did you draw any distinction in the trial court between that testimony coming in to establish Article III standing versus establishing the element of the protectable interest for the purpose of the 14th Amendment claim? Well, I think just the fact that they are married, that would satisfy as a threshold that she is entitled to recovery on the 14th Amendment cause of action. The significant other— She's married and they have a minor child. No, they're—yes, two minor children at the time of the death. Three minor children at the time of the death, I'm sorry. So the substance of that relationship— There's some question about parentage, I think, or paternity as to one child, but certainly not as to the other. So I don't think we need to get into that. Right. But I—so I'm just trying to get to this other argument, which is that your position is that your client was married. They were lawfully married. I think that's uncontested. That is correct. Right? And they had at least one minor child together. They had three. Okay. That's fine. For my purposes, it's just a box. I'm checking mentally for—to move through this. I don't mean any disrespect. I'm trying to get a distinction between—I think your argument is that this evidence should have only come in on the damages phase. What I'm suggesting is, even if it didn't need to come in to establish standing, Article 3 standing, wouldn't your client have to have testified that she's got a protectable interest for purposes of the 14th Amendment, an element of the 14th Amendment claim? I think that she should only, at the liability phase, have to testify that she was married. Okay. And your position is that would satisfy Article 3 and the element is that— That is correct, because I think the damages come in as to what their relationship looked like, how close they were, what that loss looks like. Got it. And that those were damages issues that were placed in the liability phase of trial. And you offer a stipulation that the woman was married and had a child? Yes, Your Honor. And that stipulation was refused by the defense? That's correct. Thank you. On the—just picking up on Judge Christin's question, if this is Article 3 standing, and I appreciate you're in a difficult position given our law on this isn't decided, but can we reach or could the district court reach, I guess, assume if it's Article 3 standing? Assume Article 3 standing? That seems backwards under the way that we typically understand our jurisdiction only to decide cases in which the plaintiff has standing. Well, I think in this cause of action is different because all marital relationships are different. And because they were having strife in their relationship and even because the word divorce was mentioned does not mean that they were not married. So I think for a 14th Amendment cause of action, what the focus should be was what was the extent of this relationship. And in that—in a damages phase, I completely understand. Let's talk about the fact that they were going—having marital problems. Let's talk about the fact that there may have been other relationships. But from a liability stand, I believe that we are inflaming the jury because now we're seeing this is not the person that we're trying to present as this good upstanding person. He's a horrible husband. He's dodging parole officers. But under our legal standard, doesn't that go precisely to liability, the robustness of their relationship or whether they had a relationship? I think for the initial threshold standing issue, it should be whether or not they were married. Just—it's the same as whether or not these are his children. Whether or not they're married allows the finding that there was a concrete injury. But the flavor of the marriage might determine whether there was an injury or not. I think the flavor of the marriage may determine what the value is from a damages perspective. If there's any damage at all? If there's any damage at all. But again, I— And that is not a standing issue? I think that it is a—that issue, while it is a standing issue, was better presented in the damages phase of the trial of the other different person. You think it was an abuse of discretion by the judge to allow that evidence in? That is correct. All right. Counsel, you're just about out of time. Would you like to save the rest for rebuttal? Yes. Okay. That's fine. When you come back, just for planning purposes, we'll put two minutes on the clock. Thank you. You bet. We'll hear from opposing counsel, please. Good morning. Good morning. Thank you, Your Honor. May I please score it? My name is Norman Morrison. I'm counsel for Officer Pelayo in this case. In this case, we're here again on a second appeal. The first appeal was relating to the district court's decision regarding qualified immunity. That was the facts. In the prior appeal, the court said it should go back to be tried by a jury as to whether or not a jury found that, among other things, Mr. Elkins reached for his waistband immediately before he was shot. Well, and the prior panel made the observation that, I think it's uncontested, he was shot several times. He was running away. And so it needed to go back. It couldn't be resolved at summary judgment, right? It felt it because they, among other facts, Mr. Elkins wasn't there. There was questions. They felt that the jury should decide regarding the use of force in a summary judgment standpoint. We're not in the summary judgment standpoint at this point. We went back. We had a three-week trial where plaintiffs questioned Officer Pelayo extensively over the course of approximately two days regarding details of the shooting, the events that occurred. They questioned the other officers involved. They questioned the other individuals that may have observed it. So they got all of those facts at the trial that the original court on the original appeal had said should be decided by a jury. They elicited those facts. But Mr. Morrison, they did not get the facts going to the negligence claims. And I guess I'd like to ask, how do you, what do you understand we were referring to when we said that, when we referred to plaintiff's state law claims, what else would that refer to other than negligent tactics in this decision? Why isn't it controlled by the mandate? Well, it's not controlled by the mandate, Your Honor, because if we look at the court's prior decision, there were numerous state law claims, not just the negligent tactics. They also had assault, battery, and the Bain Act claims. Those are all state law claims. The court, those claims, as the court recognized, and in fact, appellants themselves recognized in their briefing, those are all held and evaluated under the same standards as the Fourth Amendment. However, the negligent tactics claims are, involve a totally different standard as reflected by the fact that that was a question certified to the California Supreme Court. But that's why it's tough for me to parse out whether the complaint, and hence our prior panel, is really even referring to the negligent tactics claim. Because there's a bare assertion in the complaint about negligent tactics, but the prior panel's statement about all of the state claims, state law claims, being held to the same standards isn't correct if you include the negligent tactics claim in the basket. It's not correct, Your Honor. And that's why, among other factors, the district court, in its rulings, if you look at its rulings that are being appealed from, it specifically recognized that fact. It discussed the fact that the standards are different. Yes, so what conclusion do you draw from, we know that, but what conclusion do you draw from that? Does that mean, because we're talking about the mandate, whether the mandate controls. So do you think that the prior panel wasn't referring to that claim at all? It overlooked it or didn't think it was adequately pleaded? What conclusion do you draw? I don't believe the prior panel addressed that issue at all. I believe that they did not remand, reverse and remand on that issue. They reversed and remanded on the Fourth Amendment related issues. So if I can get you, so does that mean you conclude that the mandate did not speak to this and did not control? It did not. And that's under, I believe it's Rocky Mountain, which we cite in our brief. That's a yes? That's a yes? That is a yes, Your Honor. Okay, thank you. But wasn't the prior panel's ruling to reverse both the motion of summary judgment ruling and the dismissal of the complaint ruling? It affected on the motion for summary judgment. The dismissal, I don't believe, was addressed at that point because this was the issue. The order of the panel was to reverse the decision to dismiss for motion of summary judgment and for failure to adequately plead, correct? As I read the prior panel's decision, no. It affects just the Fourth Amendment related causes of action. That would be the state law claims that relate to the Fourth Amendment. Did it specifically accept state law claims? It accepted and addressed the, by discussion of the Fourth Amendment standard, it addressed the wrongful death. The ruling was to reverse, correct? The ruling reversed, correct, but it did not reverse. It reversed everything? No. No? Mr. What portion of the first trial court's ruling was affirmed? Would you tell me that? There was no portion that was directly affirmed. Of course it wasn't. It was all reversed for whatever reason, but the fact of the matter was that the ruling was reversed, all of it, not part of it. Part of it was not affirmed, true? It was not directly affirmed. I would agree with that. Not directly or implicitly affirmed. It just wasn't affirmed. The ruling was reversed. There's not the word A-F-F-I-R-M anywhere in the ruling, correct? I would agree, Your Honor. I would agree with that. The word affirm is not in there. However, I would disagree that it was not implicitly because the court did not address this particular issue. That's what you say. Well, I believe the court's decision actually speaks for itself, and that was the issue and the court told them. Forgive me for interrupting, but when you're using the issue now, you're referring to the negligent tactics claim? Negligent tactics. Correct, Your Honor. Thank you. Okay. I'm not addressing, and just to be clear, I'm not addressing the other state law claims which the court did reverse and that were tried in the trial. Those would be the assault, battery, and Bain Act. Those issues were tried. Mr. Morrison, to pick up on, I think, Judge Baez's line of questioning, your own conduct in the litigation assumed that it was reversed because you renewed a motion which was a motion, well, for judgment on the pleadings, motion to strike, motion to eliminate. We're not exactly sure what the posture was, but you renewed that motion so that you could revive the summary judgment decision on negligent tactics, did you not? I believe that motion actually predated me, Your Honor, so I can't speak directly to the background of it. I came at this case in 2020. But not you personally, but isn't Judge Dunston correct about what whoever was representing the officer did? I believe they were asking for clarification and, yes, to affirm that it did, in fact, not address the negligent tactics, that the decision still stood, the prior summary judgment still stood as to that issue. And is that, I guess, I think one of the things we're trying to figure out is, is that based on the pleadings, a failed plea, of course, it was, your friend noticed that it was developed quite substantially in a subsequent summary judgment motion. Was it based on the pleadings? Was it, there's some inherent power? What does the judge's decision on this motion do with respect to the negligent tactics claim? I believe it was based upon the pleadings and the fact, as the district court noted, the fact that plaintiffs did not introduce evidence, and the evidence that was introduced related to the decisions made by third parties, not by Officer Palaio. The court said there's not, the plaintiffs, in this case the appellants, did not produce any evidence to establish that the actions of a third party, the orders and decisions of a third party, could be imputed to Officer Palaio for a negligent tactics theory. I think we may have a garbled record. I want to make sure I understand your position on this because there's a motion filed. I thought it was a motion in Lemonade that was converted by the trial court. Is that not right? And now you're speaking that evidence was not introduced, and I know there's a three-week trial, so maybe what I don't know is the point at which this ruling was made. This ruling was made prior to the trial, so the court, it was filed as in the alternative in the alternative. Right. So when you just said, that's what I thought, so it's a pretrial ruling, I think that we all understood that from your briefing anyway, so when you just said the plaintiffs didn't introduce evidence, you're speaking pretrial as opposed to, as opposed to during the course of the trial? Correct. And it was based upon the fact that at this point discovery had closed, they already had all of it, they did not introduce anything in response to summary judgment, or in response to the motion that was presented, the motion that was ultimately treated as a motion in Lemonade. Okay, so I'm not trying to be tedious here, but I just want to acknowledge that I am. But that's not my intent. When you just referenced summary judgment, are you talking about the first summary judgment that was the subject of the remand? Yes, there's only been one summary judgment in this case. Well, as opposed to this other motion that, as you have candidly acknowledged, was a sort of in the alternative in the alternative, and then was converted. So that's, I'm going to refer to that as a second motion, it was the pretrial motion, you've acknowledged that, and the judge converted it into a motion in Lemonade, and by doing, and in doing so then excluded this claim, right? Correct. Okay, so that, so far, now we're back to where my notes had me coming into the courtroom this morning. And your position is that this was permissible because no evidence had been reduced in response or in opposition to that motion? Well, first off. That would have supported the negligent tactics claim, is that it? No, Your Honor, that's not the entire argument. The district court also found that Plants had not pled sufficient facts, they had pled only a legal conclusion, and that's insufficient under Iqbal Twombly. So therefore, that was part of it, and then it also found that they had not introduced facts and what they had presented, again, related to the actions and decisions of third parties. It's just peculiar because if the, if the, I read the order the same way, and if the court was looking at the complaint and thought this was an Iqbal Twombly problem, then I, I guess I'm wondering, the motion that we're referring to as the pretrial motion, did it include a request to dismiss the claim outright, because it was converted into a motion in that case? I believe it, I don't recall specifically, Your Honor, I don't want to speculate as to it. I don't recall the specifics of that. I appreciate your candor. Thank you. The second issue I'd like to briefly address relates to the standing issue. As the court recognized, standing is at issue here, and plaintiffs basically, the appellants have stated that they should have just been allowed to state that because they're married, that's sufficient. This court has not recognized it. This court has never held, the Ninth Circuit has never held that simply being married gives you a 14th Amendment standing. The district courts have come out on both sides, however, the more recent cases have held that simply being married does not give you the automatic right to a 14th Amendment standing for deprivation claim. And that comes to the fact that the 14th Amendment relates to the direct, I'll use the term bloodline relationship between parents and children, and children and their parents, in this case, the decedent's parents and the decedent's children. The court has held that those are relationships protected by the 14th Amendment. There was a question relating to one of the children, that was because Ms. Elkins' testimony established during her deposition showed that that minor was not a child of the decedent. We understand that there may have been a question, but for purposes of today's, about parentage, but for purposes of today's argument, as I indicated earlier, I don't think it matters because there's a child of the marriage. And so plaintiff, right, was married, lawfully married, and they had at least one minor child. Opposing counsels corrected me and said she thinks there's three, but there's one, right? So for purposes of standing, understanding, just do a hypothetical for me, if you will. If a person who's lawfully married and has one minor child and she wants to claim that she's got standing for a wrongful death action for her husband, your position is that's not so? It's nuanced, Your Honor. As to the child, yes, there is standing. As to the spouse, the Ninth Circuit has not held that there is a spousal right. The district courts have held that there is not an automatic spousal right. It goes to the nature and quality of the relationship. Therefore, she has to establish that they had the type of deep-connected bonds that the 14th Amendment protects. What I posited earlier in my question is that she may have to establish that for purposes of showing the element, an element of the 14th Amendment claim that is a protectable interest, but I'm not so sure she needs to do so to establish Article III standing. Either way, the evidence would come in on the liability side, not on the damages side. I'm not trying to split hairs, but you do seem to be clinging hard to Article III standing, and I'm wondering if you're biting off more than you need to. No, Your Honor. As I was going to proceed to, the evidence also came in, as the district court recognized, it also came in as to certain of the liability issue. That relates to some of the aspects of their relationship was necessarily involved in the events here. How do you mean? Her knowledge of the decedent's methamphetamine abuse, which was a factor that was considered and known to the officers. He was reportedly, quote, spun out on methamphetamine. Well, that goes to the use of force issue, but she's pleaded in her briefing to us something quite different, which is what she's describing as embarrassing facts, or facts that had nothing to do with the incident, but really only disparaged the nature of the relationship. That they were separated and they had other relationships. And that didn't go to liability, did it? Some of them did, Your Honor, and that's because it goes to the relationship. For example, some of the facts at testimony, she testified that she had spoken with the decedent the night before. Now they were separated at this time. She spoke with him the night before, and he testified about this event. She also testified she'd lied to the law enforcement officers about her knowledge of his location. All of these are facts that tie in one way or another. It doesn't matter that they were separated. The trial court certainly could have excluded that. Again, I'm not trying to split hairs, but I really don't understand what those facts had to do with anything or why they had to come in. So, can you just hone in on that point and tell me what I'm missing? Sure. They come into regard as to the nature and quality of the relationship, which is required to establish, again, this cause of action. I think it should also be noted, and I know my time's almost out, so I just wanted to make this point. You're fine. I think it should also be noted that the district court restricted what evidence. We could not bring in everything. A lot of the additional evidence relating to the, quote, bad facts or the facts that they didn't want to bring in. We were not allowed to bring those in at this point. The court was very specific as to what facts could be brought in because the court felt there was crossover as to some of them. What facts were you not allowed to bring in? We were not allowed to bring in a number of the facts relating to specifics of the prior relationship, specific events in the prior relationship. Domestic violence, allegations? Allegations of domestic violence, allegations of domestic violence involving children, similar events. We were not allowed to bring those facts in. Thank you for your answer to my question. I think I got it.  Judge Bea? No. Thank you for your presentation. We appreciate it. Thank you, Your Honor. Two minutes of rebuttal. Very quickly, I just wanted to point out that another deviation from the underlying appeal was the court's instruction to the jury that they had to consider whether or not Mr. Elkins reached for his waistband. And the opinion was very clear that even if he did reach for his waistband, that divorce may have been excessive. And another thing that we didn't address was the prior incident. Almost two years to the date prior to this incident, Mr. Elkins, I'm sorry, Officer Palaio chased an unarmed suspect, socked him in the face, and threatened to kill him. Yet for reasons unbeknownst to appellants, the district court did not find those incidents similar enough to allow that introduction in trial. Ms. Jordan, the court would have the ability to reconsider the qualified immunity based on the jury's findings. Doesn't that explain the interrogatory? Why wouldn't it? Well, I think it's because that would limit. The qualified immunity is not limited to whether or not Mr. Elkins reached for his waistband. So I think that would be misleading to the jury that for them to assume that, well, if he reached for his waistband, then automatically he must be, the use of force must be reasonable. But there are several interrogatories. The jury didn't get to it given its verdict, but there is a whole line of interrogatories that went to various specific claims. Isn't this just one of them? But if the judge is requiring the jury to focus in on this court allegedly pursuant to the appellate court's ruling in the underlying case, which was erroneous, then I believe that that was misleading to the jury for them to focus on that issue. Let me tell you directly my problem with this part of your argument so you have a chance to understand, please. And just tell me what you think I'm missing. My read is that the prior disposition from our court indicated that whether he reached for his waistband, the decedent reached for his waistband, is a question that ought to go to the jury. That's correct. So I think to win on this argument that you're making now, your first problem is the one Judge Johnstone just mentioned, which the jury didn't get to it. I appreciate that was still front and center on an interrogatory that you found unhelpful to your client's case. I understand that argument. But wouldn't we have to say that the district court abused its discretion by including it, which is tough, right? Because the prior disposition indicated this question needs to go to the jury. But I don't know that the district court had to include it on the verdict form. I think that he could have definitely considered it.  It didn't have to be included on the form. But you have to show, don't you, that it was an abuse of discretion to include it on the form. Yes. Okay. And your argument is that it was unduly prejudicial? It was unduly prejudicial because it— It should have been baked into the instructions as opposed to been on the verdict form? Is that your spot? It was unduly prejudicial because I believe that it highlighted an issue and caused the jury to focus on an issue that was not dispositive of the entire case. So you're saying it unfairly highlighted one aspect of the excessive force analysis? That's correct. Got it. Other questions? It appears not. Thank you both. Thank you. Thank you both for your arguments and for your briefing. It was very helpful. We'll take that case under advisement. Thank you.
judges: BEA, CHRISTEN, JOHNSTONE